[Civ. No. 34096. Fourth Dist., Div. Three. Oct. 25, 1985.]

ROBBIE F. CROSS, Plaintiff and Appellant, v.
MUTUAL BENEFIT LIFE INSURANCE COMPANY et al.,
Defendants and Appellants.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rule 976 (b), parts II and III are not published, as they do not meet the standards for publication.

**COUNSEL**

David I. Lipsky and Shernoff, Lipsky & Blickenstaff for Plaintiff and Appellant.

Adams, Duque & Hazeltine, Jeffrey P. Smith and Jeffrey A. Tatum for Defendants and Appellants.

## OPINION

**SONENSHINE, J.**—We are asked to determine whether a foreign insurer, issuing and delivering an insurance policy covering California employees to an out-of-state trust, may be held accountable under California law forbidding application of a superseding group insurance policy's clause limiting liability for preexisting conditions. Under the circumstances of this case, we find the insurer is estopped, by the provisions in the employee's certificate of insurance, to claim immunity from California law. We further determine, in the unpublished portion of this opinion, summary judgment was improperly granted on the tort causes of action.

On April 1, 1979, Robbie Cross' employer, Pharmaceutical Associates, Inc., (Pharmaceutical) replaced its group insurance policy with participation in one underwritten by Mutual Benefit Life Insurance Company (Mutual). The Mutual master policy was originally issued in 1970 to the trustees of the Retail Industry Trust Fund, a multiple employer trust located in Rhode Island. The policy disclaimed coverage for injury or sickness for which an insured had consulted a physician within the three-month period prior to inception of the policy.[2]

Pharmaceutical's application form noted the inclusion of this limitation but provided it would be waived up to a $2,000 maximum for certain employees, including Cross. Pharmaceutical received, and distributed to its employees, certificates evidencing coverage under the policy; the certificates also contained a notice of nonliability for preexisting conditions but indicated Pharmaceutical was the policyholder.

Later in April, Cross became ill and incurred substantial medical expenses. Although the previous policy would have allowed reimbursement,

---

[2]The policy provided: "The Major Medical Insurance provisions for the Policy do not include as covered charges, or provide benefits for, charges incurred in connection with: . . . (h) . . . any injury or sickness or a related injury or sickness for which an insured individual has consulted with a licensed physician or dentist or received any medical or dental care or services within the three month period immediately before becoming an insured individual, unless incurred after the expiration of: [¶] (i) three consecutive months during which the insured individual has not consulted with a licensed physician or received any medical care or services for such injury or sickness, or [¶] (ii) if the insured individual is the person insured, six consecutive months during which such insured individual shall have been continuously insured under the Major Medical Insurance provisions of the Policy and actively at work on a full-time basis . . . ."

the claims submitted to Mutual were denied because Cross' medical problems preexisted the effective date of the Mutual policy.

In November, Cross' attorney contacted Mutual, demanding full payment (she had received the $2,000 maximum allowed under the preexisting condition clause) pursuant to Insurance Code section 10128.3, subdivision (c).[3] The section provides: "Except as otherwise provided in this section, and except to the extent that benefits for the condition would have been reduced or excluded under the prior carrier's policy, no provision in a succeeding carrier's policy of replacement coverage which would operate to reduce or exclude benefits on the basis that the condition giving rise to benefits preexisted the effective date of the succeeding carrier's policy shall be applied with respect to those employees and dependents validly insured under the prior carrier's policy on the date of discontinuance."

Mutual replied the policy was not subject to the section because the prohibition against preexisting condition limitations only applies to "policies issued, delivered, amended, or renewed in this state after January 1, 1977." (§ 10128.4.) Cross approached the California Insurance Commissioner for an opinion but was instructed as follows: "This coverage appears to be a non-California group coverage. Therefore the courts must decide the issue . . . ."

Cross filed a complaint for breach of the duty of good faith and fair dealing, breach of fiduciary duties, common law fraud and breach of statutory duties. Mutual answered and thereafter filed a motion for summary judgment, claiming section 10128 did not apply to its policy and no triable issues of fact existed as to the tort causes of action. Plaintiff, on cross-motion for summary judgment, contended the section was applicable and precluded denial of coverage.

The court declared the code was applicable to the policy but dismissed the tort causes of action, granting leave to amend the complaint to allege breach of the insurance contract. Judgment was delayed until Cross' amended complaint was filed and her motion to state a class action heard. Cross filed her amended complaint and, in October, requested leave to file a second amended complaint to state a class action. The motion was denied. Judgment was eventually entered in Cross' favor on the amended complaint for breach of the insurance contract.

Cross appeals the summary judgment granted to Mutual, finding no triable issues on the tort causes of action, and the denial of her motion to state a

---

[3]All statutory references are to the Insurance Code unless otherwise specified.

class action. Mutual appeals the court's ruling finding California law applicable to its policy and allowing judgment in Cross' favor on the first amended complaint for breach of the insurance contract.

I

Applicability of Section 10128

■ Mutual claims section 10128.3 cannot apply to this policy because Cross' employer obtained the coverage through participation in a multiple-employer trust situated in Rhode Island. The policy was issued to the Rhode Island trust, signed by Mutual officers in New Jersey, and delivered to Rhode Island. The trust retained possession of the master policy. All amendments were formulated and endorsed in Rhode Island; there has been no renewal. Therefore, Mutual argues, the policy does not fall within the parameters of section 10128.4.[4]

However, there remains the issuance of the certificate of insurance in California. Mutual insists, and we agree, mere delivery of certificates cannot constitute delivery of the policy. Mutual relies on *Boseman* v. *Insurance Co.* (1937) 301 U.S. 196 [81 L.Ed. 1036, 57 S.Ct. 686, 110 A.L.R. 732]. There, a Texas employee of Gulf Oil received a certificate of insurance, under a policy issued in Pennsylvania, containing a clause disallowing any payment after termination unless notice was given within 60 days. The clause was not valid in Texas. Filing for benefits after the 60-day period, the employee was not entitled to payment. The employer had requested *issuance and delivery* to it in Pennsylvania and had requested the policy be subject to Pennsylvania law. Thus, between the insurer and the employer, Pennsylvania law controlled. However, the issue was which law, as between the insurer and the plaintiff employee, controlled. The plaintiff was not a party to the negotiations or the execution of the contract. By his application (to his employer) he "accepted the provisions of the policy . . . ." (*Id.,* at p. 203 [81 L.Ed. at p. 1040].) Moreover, the court was concerned with the intent of the *employer,* whose employees were situated throughout the United States, "that everywhere it shall have the same meaning and give the same protection, . . ." (*Id.,* at p. 206 [81 L.Ed. at p. 1042].)

The court did not accept the employee's argument the certificate delivered to him in Texas made that state's law applicable. The certificate was not a part of the contract. As noted in the policy, "[i]t did not affect any of the terms of the policy." (*Id.,* at p. 203 [81 L.Ed. at p. 1040].) Here, on the

---

[4]Mutual concedes its coverage constitutes "replacement coverage" and that benefits for Cross' condition would have been payable under the prior policy had it continued in effect.

other hand, the certificate contained different information than the policy; the face page of the certificate named Pharmaceutical as the policyholder.

Similarly, 44 Opinions of the Attorney General of California 55 (1964), upon which Mutual relies, is distinguishable. There was no discrepancy there between the policy and the certificate. A New York insurance company issued and delivered a policy to a New York trust company covering mortgage indebtedness in California. The policies were in an amount exceeding that allowed in California. Citing *Boseman,* the opinion declared the policy, because it was not issued and delivered in this state, did not violate the code. It also determined the certificate of insurance was not a part of the policy and continued, "Moreover, the certificate contains no insuring clauses or undertakings *beyond the provisions of the policy." (Id.,* at p. 58, italics added.) Again, the certificate was not a part of the policy and, standing alone without variance from the policy, cannot comprise the "issuance" necessary to bring California law into play. Cross' certificate determines the coverage to which she is entitled. We so conclude *not* because of the situs of issuance, but because the certificate varies from the master policy.

We find this situation more closely analogous to that addressed in *Humphrey* v. *Equitable Life Assur. Soc.* (1967) 67 Cal.2d 527 [63 Cal.Rptr. 50, 432 P.2d 746]. The certificate issued to Humphrey provided, under the construction given to it by the court, greater benefits than the master policy. The court determined the certificate prevailed over the provisions of the master policy despite the policy's statement to the contrary and the requirements of section 10207.[5] "The purpose of the section [section 10209 requiring issuance of a certificate to the insured employee] is to provide persons insured under group policies with information regarding the coverage afforded. Obviously, only *accurate* information will satisfy the statutory requirement. To hold that an incorrect description of coverage is adequate would thwart the legislative purpose." (*Id.,* at p. 533, italics added.) The court justified its holding "upon the grounds that the individual certificate is the only document which the employee sees or is given at any time and that the insurer, who drafts the instrument in language it selects, cannot thereafter complain that it does not express the intention of the parties." (*Id.,* at p. 534.)

Cross' application noted Pharmaceutical would be the policyholder; the box for insertion of "Employer, if different from Policyholder" was left

---

[5]The pertinent part of section 10207 provides: "The policy shall contain a provision that: (a) The policy, the application of the employer and the individual applications, if any, of the employees constitute the entire contract of insurance."

blank. Her certificate, issued by Mutual, stated Pharmaceutical was the policyholder. It contained in bold letters, on its face, the following notice: "Policyholder Pharmaceutical Associates." "'Policyholder' means the entity to which a policy or contract specified in Section 10128 is *issued.*" (§ 10128.1, subd. (g), italics added.) No insurance company *issuing* a policy in this state (§ 10128.4) which contains a preexisting condition limitation provision may apply that provision "with respect to those employees and dependents validly insured under the prior carrier's policy on the date of discontinuance . . . ." (§ 10128.3, subd. (c).)

Whether by mistake or inadvertence, Mutual provided a certificate indicating on its face Cross' employer was the policyholder. It cannot now claim reliance on a policy, never given to Cross, which provides otherwise. ■ The California Supreme Court has held "that in the event of a conflict or ambiguity between [the master policy and the individual certificate], 'the terms of the *certificate* are binding on the insurer.'" (*Williams* v. *American Cas. Co.* (1971) 6 Cal.3d 266, 271, fn. 2 [98 Cal.Rptr. 814, 491 P.2d 398], italics in original.) The trial court properly found California law applicable to this policy.[6]

### II*

### Tort Claims

. . . . . . . . . . . . . . . . . . . . .

Summary judgment on the tort causes of action is reversed. In all other respects, the judgment is affirmed.

Trotter, P. J., and Wallin, J., concurred.

---

[6]In light of our decision, we need not reach Cross' contention the general rules regarding conflict of laws require application of California law. If that were necessary, we would be persuaded by the following: Mutual is authorized to do business in California; its agents, as brokers and claims representatives, are located in California; all negotiations took place in California; Pharmaceutical is a California employer obtaining insurance for California employees, who will qualify for, and be paid benefits in, California; Cross' claim was reviewed and initially denied by the Los Angeles office. California has a strong public policy interest, clearly expressed by the Legislature, in protecting its citizens from a lapse in their insurance coverage merely because their employer changes insurers.

*See footnote, *ante,* page 821.