[No. 9418–5–II.   Division Two.   October 21, 1987.]

SHERRI FITTRO, *Petitioner,* v. LINCOLN NATIONAL LIFE INSURANCE COMPANY, *Respondent.*

*James E. Warme* and *Calbom, Pond, Falkenstein, Warme & Engstrom,* for petitioner.

*D. Joseph Hurson* and *Lane, Powell, Moss & Miller,* for respondent.

PETRICH, J.—On the petition of Sherri Fittro, we accepted discretionary review of the Cowlitz County Superior Court's order on partial summary judgment, which declared that Fittro's major medical benefits under her group health insurance plan terminated on September 30, 1983. The dispositive issue on appeal is whether the various provisions of a certificate of coverage, which outlines the benefits and is issued to an employee, take precedent over and control the provisions of a group insurance policy issued to an employer, when there is an arguable conflict between the two as to benefits.[1] We conclude that in cases where a certificate of coverage arguably conflicts with the master policy, and the certificate contains disclaimers stating that it is not an insurance policy and directs the insured to the master policy for benefit coverage, and there is no reasonable reliance on the certificate by the insured, the master policy provisions control over those of the certificate

---

[1]Lincoln sought discretionary review of three other issues decided adversely to it in the partial summary judgment proceeding. Our court commissioner denied review. Lincoln filed a motion to modify the commissioner's ruling. However, the motion was not filed within 10 days of the commissioner's ruling as required by RAP 17.7. Therefore, the issues raised by Lincoln will not be addressed in this opinion.

of coverage. Accordingly, we affirm.

## FACTS

The facts are not in dispute. In September of 1981, Sherri Fittro was a full–time grocery checker at Keil's Grocery Store in Longview, Washington. As such, she was insured for health and disability by group policy No. G–D6819 issued to Retail Clerk's Local 148 through Lincoln National Life Insurance. Fittro received a certificate of coverage. The certificate stated that Fittro's insurance benefits were as described in the certificate booklet.

On September 26, 1981, Fittro was seriously injured in an automobile accident. Fittro was "totally disabled" as a result of the accident.[2] Lincoln paid most of Fittro's medical expenses.

On November 1, 1982, Fittro went to work at Fibre Federal Credit Union. Fittro punches data, one key at a time, into a keyboard with a pencil strapped to her hand. Lincoln terminated Fittro's disability benefits. A lawsuit followed. Fittro alleged, *inter alia,* that the certificate of coverage and group policy authorized major medical coverage in perpetuity or up to the policy limits.

Both sides moved for summary judgment. On December 4, 1985 a partial summary judgment order was entered in which the trial court concluded, *inter alia,* that the insurance policy and certificate construed together terminated insurance coverage for Fittro on September 30, 1983.

## SUMMARY JUDGMENT

An appellate court engages in the same inquiry as the trial court when reviewing an order of summary judgment. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). CR 56(c) authorizes the trial court to grant a summary judgment motion if the pleadings, affidavits, depositions and admissions on file demonstrate that there is no

---

[2]For purposes of this opinion, Fittro is presumed to be "totally disabled." However, we do not decide the issue. This court declined to accept discretionary review of the question of whether Fittro was totally disabled.

genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d at 437. The court must consider all of the facts and all reasonable inferences from the facts in a light most favorable to the nonmoving party. *Jacobsen v. State*, 89 Wn.2d 104, 108, 569 P.2d 1152 (1977).

If the facts are uncontroverted and there are no issues of material fact, the court need only decide if the moving party is entitled to judgment as a matter of law. *See State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984); *Hodgins v. State*, 9 Wn. App. 486, 513 P.2d 304 (1973).

Here, the essential facts are not in dispute. Both parties agree that Fittro was entitled to coverage for major medical expenses through Lincoln. The dispute concerns a question of law as to the length of time Fittro was entitled to benefits.

### INTERPRETATION OF CONTRACT AND CERTIFICATE

"The interpretation of an insurance contract is a question of law." *Greer v. Northwestern Nat'l Ins. Co.*, 36 Wn. App. 330, 334, 674 P.2d 1257 (1984). Fittro contends that the certificate of coverage conflicts with the master policy in that the certificate extends major medical benefits indefinitely so long as she is totally disabled and has remained so for 12 months, while the master policy limits the extension of major medical to a maximum of 12 months following the date of termination. Fittro urges us to hold that the language of the certificate controls.

The certificate of coverage provisions at issue are as follows:

### Termination

In the event this insurance is terminated or employment terminated and the insured or his dependent is totally disabled, the disabled person will continue to be eligible to receive Major Medical benefits, providing he remains totally disabled for a period of 12 months following termination.

### Termination of Benefits

Your insurance will automatically terminate on the earliest of the following dates: the last day of the calendar month for which your premium has been paid or the date the Master Policy terminates. If you are unable to work because of disability . . . inquire of your employer as to your rights, if any, under the Master Policy.

The face sheet of the certificate of coverage states as follows:

This certificate of insurance is not an insurance policy and does not amend, extend or alter the coverage afforded by the policy/policies listed herein. Notwithstanding any requirement, term, or condition of any contract or other document with respect to which this certificate of insurance may be issued or may pertain, the insurance afforded by the policy/policies described herein is subject to all the terms, exclusions and conditions of such policies.

The benefits are as described in this certificate booklet. The master policy provisions at issue are as follows:

### BENEFIT PERIOD

A benefit period for an employee's illnesses may be established when the employee has incurred . . .* eligible charges for all illnesses (excluding eligible charges incurred in connection with an illness for which the maximum benefit has been paid hereunder) which in the aggregate are not less than the deductible amount as specified in the Schedule of Benefits.

A benefit period so established will date from the day the employer incurs the last eligible charge used in establishing the benefit period; it will terminate on the earliest of the following dates:

(a) the last day of the calendar year in which it was established, or

(b) the day the employee ceases to be insured for Major Medical Expense Benefits.

### EXTENDED COVERAGE

If upon the date of termination of an employee's personal insurance for Major Medical Expense Benefits, he is totally disabled by bodily injury or disease so as to be continuously prevented thereby from engaging in any occupation for compensation or profit, coverage for the employee pertaining solely to the illness which caused

the total disability will be extended during the subsequent period of continuous total disability, but for not longer than ** months after the date of termination. The provision applicable to extended coverage will be the same as would have applied had the insurance not terminated.

   *during a calendar year,
   **twelve

The master policy defines termination as follows:

Individual Termination of Personal Insurance

   The personal insurance of an employee shall automatically terminate immediately upon the earliest of the following dates:

   (a) the date of his termination of employment with the Employer or of his termination of membership within the eligible classes [*i.e.,* union member working 80 hours or more per month];

   (b) the date of termination of the policy;

An employee's termination of employment shall be deemed to have occurred on the last day of the calendar month coincident with or immediately following cessation of his active work within the eligible classes, except that an employee who is on an approved leave of absence, temporarily laid off, employed on a part–time basis or unable to work because of disability will nevertheless be considered as still employed within the eligible classes until the Policy Holder, acting in accordance with rules precluding individual selection, terminates the employee's personal insurance by notifying the Insurance Company to that effect or by discontinuing premium payments for such insurance . . .

According to Fittro, the certificate of coverage relating to duration of benefits is ambiguous. She contends the provision could reasonably be read two ways. First, the disabled person will continue to be eligible for major medical benefits indefinitely, provided that the insured has remained totally disabled for a period of 12 months following termination. Second, the disabled person will continue to be eligible for major medical benefits for a period up to 12 months after termination provided that the insured remains totally disabled.

■ We do not believe this provision in the certificate is ambiguous. As pointed out in Judge Reed's concurring opinion, Fittro's first interpretation of the disputed clause would lead to an absurd result that could not have been intended by the insurance company. But even if the certificate in this case contained an ambiguity as to the extent of coverage, Fittro would not prevail.

Reduced to its essence, the master policy states that if upon the date of termination the insured is totally disabled the benefits will be extended during the subsequent period of continuous disability, but for no longer than 12 months following the date of termination. Termination occurs when the insured is terminated as a member of the eligible class, when premium payments are discontinued, or when the master policy expires.

Whether or not the various provisions of a certificate of coverage issued to an employee take precedence over and control the provisions of a group policy issued to the employer is a question of first impression in Washington.

According to a leading authority on insurance law, other states have taken divergent positions on this issue. 13A J. Appleman, *Insurance* § 7528 (1976). Some jurisdictions hold that the certificate is not a contract, but is merely evidence of a contract, and precedence is given to the terms of the master policy. Other jurisdictions hold that the master policy and certificate both constitute the contract of insurance and are to be construed together. In the case of a conflict, some courts have held that the language in the certificate will control.[3] However, the majority of the courts have held that the policy language controls in the face of a conflict when the certificate specifically states that it is subject to the terms of the master policy and directs the insured to look to the master policy.

---

[3]This result usually occurs when statutes require certificates, which set out a summary of the essential features of the policy, to be issued to insureds and such certificates do not direct the insured to consult the master policy. These courts usually hold that the insurance company is estopped from denying coverage.

■ The latter appears to be the better rule. Here, the extension of benefits provision in the certificate of coverage is, in Fittro's view, arguably ambiguous. Washington does require that certificates of coverage listing the essential features of the insurance coverage and to whom benefits are payable be issued to insureds. RCW 48.21.080.[4] But, the certificate issued to Fittro specifically stated that it was not an insurance policy and did not amend, alter, etc., the provisions of the master policy. Moreover, in the case of a disabling injury, the certificate directed Fittro to make an inquiry to the policy holder regarding her rights, under the master policy. Fittro stated that she did not read the certificate of coverage until her rehabilitation period and understood that the certificate was not her insurance policy.

Therefore, estoppel is inappropriate because there was no reliance on the certificate language by Fittro. *Cf. Brown v. Charlton,* 90 Wn.2d 362, 366, 583 P.2d 1188 (1978) (holding that estoppel requires reliance by an injured party). Consequently, because the certificate stated that it was not an insurance policy, directed insureds to look to the policy, and there was no reliance by the insured on the certificate provisions, we conclude that the terms of the master policy control.

Here, Fittro became an ineligible member on September 26, 1981, because she was no longer able to work for Keil's Grocery. Her policy premiums had been paid by Keil's through November 1981. Because Fittro was totally disabled, the 4–month waiver of premium extension applied so coverage was extended to March 1982. Fittro then opted for the 6–month self–pay privilege thus extending coverage through September 1982. According to the policy, this was Fittro's termination date. Because she continued to be totally disabled, the extended coverage provision became applicable. That provision extended insurance coverage for

---

[4]The statute does not require the insured to be provided with a copy of the policy. The employer must receive a copy of the master policy.

a maximum of 12 months from the date of termination. Therefore, on the limited issue before us, we conclude that Fittro's benefits expired on September 30, 1983.

Moreover, we are not persuaded by Fittro's argument that the master policy itself grants benefits in perpetuity or up to the policy limits. Fittro cites the waiver of premium provision for this proposition. The provision is as follows:

WAIVER OF PREMIUM BENEFIT PROVISION FOR GROUP DISABILITY INSURANCE

(a) Total Disability—If, while the policy is in force, an employee, while insured under the policy and prior to his sixtieth birthday, becomes totally disabled (as defined in paragraph (e) below) as a result of an accident or injury and if due proof of such disability is submitted before the cessation of premium payments for his insurance or within ninety days thereafter, the Insurance Company will extend the personal and dependents insurance with respect to such employee, without payment of premiums during the continuance of such total disability, beginning with the first day of total disability and terminating on the first day of recovery, provided that such waiver of premium may not in any event be continued beyond the last day of the fourth calendar month of total disability.

Subsection (d) provides as follows:

(d) The extension of insurance without payment of premiums shall cease immediately on the earliest of the following dates:

(1) On the date the employee ceases to be totally disabled, or

(2) On the day immediately following the last day of the fourth calendar month of continuous total disability, or

(3) On the refusal of the employee to be examined as herein provided, or

(4) On the sixty–fifth birthday anniversary of the employee, or

(5) The date on which the insurance would otherwise terminate, except for termination due to the non–payment of premiums.

■ The language in an insurance policy should be interpreted in the way it would be understood by the average person. *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d

477, 480, 687 P.2d 1139 (1984). An ambiguity, two reasonable and fair interpretations of a provision, is construed in favor of the insured. *Safeco Ins. Co. of Am. v. Davis,* 44 Wn. App. 161, 164, 721 P.2d 550 (1986). Unambiguous language in an insurance policy is not subject to construction and must be given effect according to its plain meaning. *Abbott v. General Accident Group,* 39 Wn. App. 263, 267, 693 P.2d 130 (1984); *Tucker v. Bankers Life & Cas. Co.,* 67 Wn.2d 60, 66, 406 P.2d 628, 23 A.L.R.3d 1098 (1965).

As understood by an average person, the essence of subsection (a) is as follows: If the age criterion is met and an insured becomes totally disabled as a result of an accident or injury, the insurance company will extend *insurance coverage without payment of premiums* during the continuance of the disability or for 4 months, whichever comes first. Subsection (d) supports this conclusion. Subsection (d) states that the extension of insurance without payment of premiums shall cease on the earlier of the following dates: (1) recovery *or* (2) the day following the last day of the fourth calendar month of continuous disability. In essence, insurance premiums are paid by Lincoln until the disabled person recovers or 4 months have passed, whichever occurs first.

Contrary to Fittro's assertion, the provisions do not state that insurance is provided until recovery. To reach such a conclusion would be to ignore the plain unambiguous language of the contract provisions. This we may not do. *See Abbott v. General Accident Group, supra.* Furthermore, such a construction would ignore the plain language of the caption, which is a part of the contract and must be construed with the detailed provision. *See Greer v. Northwestern Nat'l Ins. Co.,* 36 Wn. App. 330, 336, 674 P.2d 1257 (1984). The caption clearly states that the detailed provisions involve a waiver of premiums.[5] Therefore, we conclude that summary judgment was proper as a matter of

---

[5]The caption reads as follows: "Waiver of Premium Benefit Provision for Group Disability Insurance."

law.

Judgment affirmed.

REED, C.J. (concurring specially)—I agree with Judge Petrich. However, I feel compelled by my brother Alexander's dissent to add some additional observations.

No harm—no foul! Or, as we lawyers say, "damnum absque injuria." Clearly justice is served in cases involving discrepancies between a certificate and the policy by application of the doctrine of equitable estoppel. When the facts to support estoppel are not present, as in the case here, the master contract or policy should control. It is safe to assume that the lower group rates charged by Lincoln National reflect a much lesser risk than if it had agreed to pay major medical benefits in perpetuity.

Apparently through unfortunate oversight, the certificate language omits a comma. When that comma is supplied, the certificate language mirrors that of the policy and reads as follows:

### Termination

In the event this insurance is terminated or employment terminated and the insured or his dependent is totally disabled, the disabled person will continue to be eligible to receive Major Medical benefits, *providing he remains totally disabled,* for a period of 12 months following termination.

(Italics mine.)

Although courts must respect and ordinarily do apply accepted rules of grammar and punctuation when construing statutes or contracts, they need not slavishly adhere to such principles if to do so would lead to a ridiculous or absurd result or clearly frustrate the intentions of the parties. *See Wilson v. Key Tronic Corp.*, 40 Wn. App. 802, 808, 701 P.2d 518 (1985).

Here, even though a literal reading of the provision in question—without the comma—appears to lead to a *logical* result, *i.e.,* that the employee must satisfy a condition precedent of being totally disabled for 12 months after ter-

mination, the result in context makes no sense. Such an interpretation would mean that until a year has expired, no determination of eligibility for extended coverage can be made. Also, that an employee who is disabled for 11½ months, but not for 12, receives *no* extended coverage. This clearly is an absurd result and could not have been intended.

As noted, addition of the comma produces a result that makes eminent good sense and comports with the policy provision. We thus have only one *reasonable* construction of the certificate language. As suggested by Judge Petrich, the phraseology is not ambiguous and therefore need not be construed against Lincoln National.

Lincoln National's predicament calls to mind the case of the unfortunate Sir Roger Casement, who swung for treason because of the placement—or lack thereof—of a comma when England's Treason Act of 1351 was translated into English from the Norman French. Unlike Casement, however, who could be said to have had little cause for complaint—because he knew the risks he was taking when he recruited Irishmen for the Kaiser's cause—Lincoln National does not deserve to swing for its negligence.

ALEXANDER, J. (dissenting)—I respectfully dissent. Although I agree with the majority's conclusion that the provision in the certificate of insurance coverage relating to termination is not ambiguous, I disagree with its interpretation of the unambiguous provision. I read the certificate as providing coverage for Sherri Fittro for as long as she remains disabled. The provision reads:

In the event this insurance is terminated or employment terminated and the insured or his dependent is totally disabled, the disabled person will continue to be eligible to receive Major Medical benefits, providing he remains totally disabled for a period of 12 months following termination.

Language in an insurance policy must be interpreted in the way it would be understood by the average person.

*State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 687 P.2d 1139 (1984). It would seem logical that language in a certificate of insurance coverage would be interpreted in the same fashion. A plain reading of the above provision leaves one with the clear impression that a person "totally disabled" will be eligible for medical benefits for as long as his or her disability persists. While it may well be that the insurer unintentionally overstated the coverage, the writing seems clear. I cannot say that the extension of such coverage creates, as the majority suggests, an "absurd result." I would take the language of the certificate at face value.

Even assuming, however, that the provision is ambiguous, in that it is capable of two interpretations,[6] any ambiguity must be resolved in favor of the insured and against the insurer. *Safeco Ins. Co. v. Davis,* 44 Wn. App. 161, 721 P.2d 550 (1986). Application of that rule of construction in this case, likewise, favors a finding of coverage for Fittro.

The real question, then, that is presented for this court's consideration is this: when a provision contained in a required certificate of insurance coverage describes greater coverage than is provided in the master policy, which provision controls? In contrast to the majority I would prefer to see this court adopt the view taken by courts in two of our neighboring states and thus, hold that in the case of a conflict between the certificate and master policy, the certificate prevails. *See Cross v. Mutual Benefit Life Ins. Co.,* 173 Cal. App. 3d 821, 219 Cal. Rptr. 305 (1985); *Humphrey v. Equitable Life Assur. Soc'y of Am.,* 67 Cal. 2d 527, 432 P.2d 746, 63 Cal. Rptr. 50 (1967); *Lecker v. General Am. Life Ins. Co.,* 55 Hawaii 624, 525 P.2d 1114 (1974).

It is suggested in the concurring opinion that the language of the certificate should only govern over the policy

---

[6]The provision, arguably, could be read as providing that: (1) the disabled person will continue to be eligible for major medical benefits indefinitely, provided that the insured has remained totally disabled for a period of 12 months following termination; or (2) the disabled person will continue to be eligible for major medical benefits for a period up to 12 months after termination provided that the insured remains totally disabled.

language when there are facts showing detrimental reliance on the certificate by the insured.[7] I must concede that there are no facts before us showing that before her unfortunate accident, Sherri Fittro was aware of the certificate language or that she changed her position in any way in reliance on the certificate. However, the aforementioned cases from California and Hawaii, which hold that the terms of the certificate are binding, notwithstanding conflicting language in the master policy, do not appear to be reliant on facts showing estoppel in that sense. Instead the results appear to be dictated by a recognition that only accurate information in a certificate will satisfy the statutory requirement that persons insured under group policies be given information about their coverage.[8] To hold that an inaccurate description of coverage in a certificate is adequate would be to thwart that legislative purpose. *Humphrey*, 432 P.2d at 750; *Cross*, 219 Cal. Rptr. at 308.

The holdings are justified additionally on the basis that "the individual certificate is the only document which the employee sees *or is given* at any time and that the insurer who drafts the instrument in language it selects, cannot thereafter complain that it does not express the intention of the parties." (Italics ours.) *Humphrey*, 67 Cal. 2d at 534.

---

[7]RCW 48.21.080 provides:

"In group disability insurance policies *there shall be a provision that the insurer shall issue to the employer, the policyholder, or other person or association in whose name such policy is issued, for delivery to each insured employee or member, a certificate setting forth in summary form a statement of the essential features of the insurance coverage, and to whom the benefits thereunder are payable* described by name, relationship, or reference to the insurance records of the policyholder or insurer. If family members are insured, only one certificate need be issued for each family. This section shall not apply to blanket disability insurance policies." (Italics ours.)

[8]The concurring opinion also contains the statement that "[i]t is safe to assume that the lower group rates charged by Lincoln National reflect a much lesser risk than if it had agreed to pay major medical benefits in perpetuity." I find no evidence in the record that the premium paid for the group policy here was any less or more than any other group policy or even any individual policy. In any case, the amount of premium paid for the insurance would be immaterial to a resolution of the issues before us.

The majority suggests that the policy language should control over the certificate language in this case because the certificate states that it is subject to the terms of the master policy, and it directs the insured to look to the master policy. While, here, the face sheet of the certificate states that it is not the insurance policy and that it does not alter or amend the policy coverage, a succeeding sentence of the certificate reads: "The benefits are as described in this certificate booklet." In light of this conflicting language, the insurer should not be permitted to avoid its express assertion that the benefits provided in the insurance policy are as described in the certificate.

Perhaps it was a mistake or inadvertence that caused Lincoln Life to issue a certificate to Fittro which provides coverage for her disability to the degree she suggests. Regardless of the reasons for the language in the certificate, in my judgment, Lincoln Life should be estopped from now claiming reliance on a policy of insurance not given to Fittro that provides less coverage than the certificate which was given to her and other beneficiaries of the policy. I would reverse the trial court.

Review granted by Supreme Court February 1, 1988.