993 F.2d 1551
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 CRAWFORD ENTERPRISES MANUFACTURING, INC., Plaintiff-Appellant,
v.
RYDER/P-I-E NATIONWIDE, INC.; the American Casualty Company
of Reading, Pennsylvania, Defendants,
v.
David P. KLINGSHIRN, Third-Party-Defendant,
Granite State Insurance Company, Garnishee-Appellee,
and
Chicago Insurance Company, Garnishee.
 No. 92-5217.
 United States Court of Appeals, Tenth Circuit.
 May 10, 1993.
 
 Before MOORE and BRORBY, Circuit Judges, and VAN BEBBER,* District Judge.
 ORDER AND JUDGMENT**
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Garnishor Crawford Enterprises Manufacturing, Inc. appeals from a judgment entered in favor of garnishee Granite State Insurance Company.[1] Crawford filed this garnishment action to recover, as a judgment creditor, insurance proceeds allegedly due debtor Ryder/P-I-E Nationwide, Inc. (Ryder). Granite State insured Ryder under an excess policy from April 1, 1982, through April 1, 1983. The district court determined Crawford was not entitled to proceeds of the policy. We affirm.
 
 
 3
 Crawford initiated the lawsuit precipitating this garnishment action in 1984. In that complaint, Crawford sought reimbursement from Ryder for financial losses it sustained when two engines it owned were damaged while being shipped by a Ryder subsidiary from Ohio to Oklahoma. The damage occurred in a highway accident on July 1, 1982. Crawford ultimately obtained a judgment against Ryder in the amount of $492,521.43. Although partial payment on the judgment was made, Ryder filed for bankruptcy protection in 1990, leaving a portion of the debt unsatisfied.
 
 
 4
 Ryder's insurance policy with Granite State provided coverage for liability incurred beyond a $500,000 retained sub-limit, with a maximum liability of $9,500,000 per occurrence. Specifically, the policy stated, "[t]he company will indemnify the Insured for ultimate loss in excess of the retained limit hereinafter stated which the Insured shall: 1) become legally obligated to pay as damages, including punitive or exemplary damages, unless prohibited by law, because of: ... Cargo Damage." Appellee's Supp.App. at 64. Crawford's judgment against Ryder fell below the retained limit.
 
 
 5
 On July 28, 1982, some four weeks after the accident involving the engines, Crawford obtained a Certificate of Insurance for the Granite State policy. The certificate did not reference the $500,000 sub-limit. The document provided, however, that its issuance did not "amend, extend or alter coverage afforded" by the Granite State policy. Id. at 79. Ryder's insurance broker apparently sent out copies of the certificate to numerous entities associated with Ryder and its subsidiaries. None of the certificates contained reference to the sub-limit.
 
 
 6
 Prior to the date of Crawford's loss, Ryder and Granite State entered into an indemnification agreement which obligated Ryder to indemnify Granite State for any liability arising from issuance of the certificates of insurance. The agreement stated,
 
 
 7
 Whereas, Granite State Insurance Company, hereinafter referred to as the Company, has issued its policy to Ryder Truck Lines, Inc., Pacific Intermountain Express Co. and their subsidiaries, hereinafter referred to as RTL/PIE, for ... cargo damage liability ... and in connection therewith has provided evidence of coverages (Certificates of Insurance) on behalf of RTL/PIE below the $500,000 per occurrence retention assumed by RTL/PIE....
 
 
 8
 Whereas, it is the intentions [sic] of the parties hereto [to] more properly allocate the losses arising, therefore, in consideration of the premium derived by the Company hereby RTL/PIE agrees to indemnify and hold harmless the Company from any liability which the Company may incur by reason of its issuance of said Certificate of Insurance.
 
 
 9
 Appellant's App. at 18. Through this agreement, Ryder confirmed its liability for the $500,000 sub-limit and acknowledged its omission from the certificates.
 
 
 10
 In this action, the district court rejected all of Crawford's claims, either through summary judgment or based on the trial briefs and agreed facts. We review de novo the district court's legal conclusions. Estate of Holl v. Commissioner, 967 F.2d 1437, 1438 (10th Cir.1992). Any factual findings are reviewed for clear error. O'Connor v. R.F. Lafferty & Co., 965 F.2d 893, 901 (10th Cir.1992). On appeal, Crawford argues 1) the trial court erred in determining Granite State was not estopped to deny coverage because of the faulty certificates; 2) the court erred in determining detrimental reliance is a prerequisite to recovery on an estoppel theory; 3) the policy and the certificate are ambiguous; and 4) that Granite State dropped into the shoes of a primary carrier upon Ryder's insolvency.
 
 
 11
 Under California law, an insurer may be estopped from denying coverage if certain conditions are satisfied.[2] Miller v. Elite Ins. Co., 161 Cal.Rptr. 322, 330-31 (Cal.Ct.App.1980); see also Cross v. Mutual Benefit Life Ins. Co., 219 Cal.Rptr. 305, 309 (Cal.Ct.App.1985) (insurer could not rely on policy provisions to deny coverage where language in certificate of insurance was contrary and insured never given copy of policy). Of particular significance here is the requirement that the insured establish detrimental reliance on the conduct of the insurer. See Elite, 161 Cal.Rptr. at 330.
 
 
 12
 Crawford argues Granite State is estopped to deny coverage if any member of the public could have detrimentally relied on the inaccurate certificates of insurance. Crawford maintains that public policy considerations dictate that Granite State be prohibited from knowingly sending out misleading certificates. See Evans v. Holly Corp., 93 Cal.Rptr. 712, 713 (Cal.Ct.App.1971) (where representations in a certificate of insurance indicate broader coverage than a master policy, insurer is bound by terms of certificate). While this argument has facial appeal, it overlooks certain fundamental aspects of the relationship between Crawford and Granite State.
 
 
 13
 As a garnishor, Crawford cannot garnish funds which Ryder, as the insured under the policy, could not recover. See 22A John A. Appleman, Insurance Law & Practice § 14565, at 491 (1979); see also Equico Lessors, Inc. v. Metropolitan Life Ins. Co., 151 Cal.Rptr. 618, 619 (Cal.App.Dep't.Super.Ct.1978) (garnishor may only reach through execution interest or property of the judgment debtor). Crawford steps into the shoes of the insured. State Farm Mut. Auto. Ins. Co. v. Worthington, 405 F.2d 683, 686 (8th Cir.1968). As a consequence, Crawford receives all the benefits of insured status, but is likewise limited to those arguments which Ryder could urge. When viewed from this perspective, we agree with the trial court that Crawford's arguments cannot prevail.
 
 
 14
 Here, Crawford cannot show detrimental reliance, as the misleading certificate was not issued until four weeks after the loss. California law provides this reliance is a prerequisite to an insured obtaining coverage based on the carrier's misrepresentations. See Garcia v. Truck Ins. Exch. 682 P.2d 1100, 1105 (Cal.1984) (no estoppel where third-party beneficiary did not rely on terms of policy to protect himself). Moreover, the indemnity agreement evidences Ryder's knowledge of the $500,000 sub-limit. The authorities which Crawford has cited in support of its argument all involve situations where an insured was misled by the certificate of insurance. It is apparent Ryder knew what the underlying policy terms were, regardless of any misrepresentations implicit in the language of the certificate. Ryder could not prevail in arguing that it was misled; therefore, Crawford cannot.
 
 
 15
 Crawford's second argument is premised on alleged ambiguities in the certificate of insurance and the policy itself. Ambiguities in insurance policies are resolved against the insurer. Reserve Ins. Co. v. Pisciotta, 640 P.2d 764, 768 (Cal.1982). If an ambiguity is found, the contract "will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates." Id. (quoting Harris v. Glens Falls Ins. Co., 493 P.2d 861, 862 (Cal.1972)). The court should not, however, adopt a strained meaning of policy language to create coverage. Reserve, 640 P.2d at 767-68. The words must be construed according to their popular and ordinary meaning. Nabisco, Inc. v. Transport Indem. Co., 192 Cal.Rptr. 207, 209 (Cal.Ct.App.1983).
 
 
 16
 Crawford alleges the inaccurate certificate of insurance creates an ambiguity because it is contrary to the language of the underlying policy. In addition, Crawford maintains two coverage clauses in the policy are conflicting, thus creating an ambiguity which must be construed favorably to the insured. Finally, Crawford maintains that endorsement 10 to the policy creates an ambiguity. We agree with the district court that neither the certificate nor the policy are ambiguous.
 
 
 17
 Although Crawford is correct that the certificate of insurance does not reference the $500,000 sub-limit, that fact does not create an ambiguity. The certificate includes specific language indicating that it does not alter or amend the policy. Moreover, there is no language in the certificate which is contrary to the policy. Rather, Crawford alleges ambiguity is created by virtue of what the certificate does not say. The disclaimer in the certificate is clear, however, as is the language in the policy related to the sub-limit.
 
 
 18
 Crawford also maintains an ambiguity arises from the wording of the "excess" and "other insurance" provisions of the policy. The excess clause provides that Granite State's liability "shall be only for the ultimate net loss in excess of the Insured's retained limit." Appellee's Supp.App. at 64. The "other insurance" section of the policy states, "[i]f collectible insurance from any other Insurer is available to the Insured covering a loss also covered hereunder ..., the insurance hereunder shall be in excess of, and shall not contribute with, such other insurance." Id. at 68.
 
 
 19
 These two phrases do not create an ambiguity. The excess clause, when given its plain and ordinary meaning, merely expresses the intended limit on Granite State's liability. The "other insurance" clause is contained in the "Conditions" section of the policy, and reflects the parties' intent that the policy be excess to any other insurance. These are not, as Crawford suggests, two coverage clauses giving rise to uncertainty about what will be paid under the policy. See McGreehan v. California State Auto. Ass'n, 1 Cal.Rptr.2d 235, 238 (Cal.Ct.App.1991) (each clause of insurance contract should be considered with reference to others in policy and all clauses should be construed together to ascertain intent of parties).
 
 
 20
 Finally, Crawford argues that endorsement 10 to the policy creates an ambiguity. It states, in part:
 
 
 21
 It is hereby understood and agreed that the Fleetway Insurance Company is named as a named insured, but only insofar as their interests may appear.
 
 
 22
 However, this inclusion shall not act to increase the Company's liabilities, nor act as a waiver of subrogation of rights and/or privilages [sic] originally assigned and/or reserved to the Company.
 
 
 23
 Appellee's Supp.App. at 61. As we understand it, Crawford alleges this endorsement is ambiguous because it does not state with clarity the extent of the coverage Granite State intended to provide Fleetway Insurance.
 
 
 24
 Throughout the course of this lawsuit, Crawford has maintained that Fleetway is a captive insurance company "fronting" coverage for Ryder, and that Granite State, in turn, "fronted" for Fleetway. Through resort to extrinsic evidence, Crawford alleges that Ryder insured its $500,000 sub-limit through Fleetway, and that Granite State "intended ... to assume all the risk of loss by reinsuring the retained limit Ryder assumed." Appellant's Opening Br. at 33.
 
 
 25
 We do not see how this endorsement could be construed to support Crawford's position. The language of this endorsement is clear. It states specifically that the addition of Fleetway will not increase Granite State's liabilities. Crawford's argument, if accepted, would require the court to impose significant additional liability on Granite State. We will not engage in the act of manufacturing ambiguities to provide coverage. Consequently, we reject Crawford's argument.
 
 
 26
 Finally, Crawford maintains that upon Ryder's insolvency, Granite State's coverage "dropped down" to primary status, thus extinguishing the retained sub-limit and creating complete coverage for this loss. The Supreme Court of California has recognized that in certain situations, ambiguities in an excess policy can result in an excess carrier becoming primary. See Reserve, 640 P.2d at 772; see also Denny's, Inc. v. Chicago Ins. Co., 286 Cal.Rptr. 507, 511 (Cal.Ct.App.1991) (no drop down where excess policy provides that liability will attach only after underlying insurer has paid or has been liable to pay).
 
 
 27
 Here, Crawford argues that the excess and other insurance clauses provide the ambiguity. We have already determined those phrases are not ambiguous. The policy states unequivocally that liability exists only "in excess of the retained limit." Appellee's Supp.App. at 64. Unlike the excess carrier in Reserve, Granite State did not agree to assume liability for any excess over "the amount recoverable" from the underlying policy. See 640 P.2d at 772; see also Span, Inc. v. Associated Int'l Ins. Co., 277 Cal.Rptr. 828, 835 (Cal.Ct.App.1991) (California law "does not require the policy to make specific provisions for the insolvency of the primary carrier".). There is no language in this policy which could be construed to require Granite State to pay the $500,000 sub-limit upon Ryder's insolvency.
 
 
 28
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 *
 Honorable G. Thomas Van Bebber, District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 This court previously considered this matter for summary disposition in light of the unknown status of garnishee Chicago Insurance Company. On January 20, 1993, the district court entered an order certifying that all issues have been resolved in that court. It appears Chicago Insurance Company was not actively involved in the garnishment proceedings. Consequently, the appeal is properly before us
 
 
 [2]
 The parties agree, as does the court, that California law applies to this action