[No. B067374. Second Dist., Div. Six. Oct. 6, 1993.]

JOHN FRAKER, Plaintiff and Appellant, v.
SENTRY LIFE INSURANCE COMPANY, Defendant and Respondent.

**COUNSEL**

Morlan & Jones and Thomas M. Morlan for Plaintiff and Appellant.

Adams, Duque & Hazeltine, James J. Moak and Steven G. Mehta for Defendant and Respondent.

**OPINION**

**STONE (S. J.), P. J.**—John Fraker appeals the trial court's granting of respondent Sentry Life Insurance Company's motion for summary judgment on count one of his complaint and the court's granting of respondent's motion for judgment on the pleadings on appellant's amended second count. Count one of appellant's original complaint sought declaratory relief that he was entitled to insurance payments from respondent for medical expenses he incurred under a policy respondent had terminated. Count two of appellant's second amended complaint sought damages against respondent for constructive and promissory fraud for representing that appellant was entitled to "lifetime" insurance benefits.

We conclude the court's rulings were correct, and affirm the judgment.

*Facts*

Appellant is an independent licensed building contractor. In 1978 he obtained group health insurance through Northwest Employer's Insurance

Trust (Northwest). Respondent underwrote the group policy provided by Northwest.

In November 1983, while the subject policy was in force, appellant injured his right eye. Appellant subsequently lost this eye. For five years he received insurance benefits from respondent totalling nearly $50,000 for his medical expenses.[1]

On November 1, 1986, respondent replaced appellant's group policy with a new group policy. Prior to this replacement, appellant had paid the "stop loss"[2] limit of $1,000 under the former policy and was receiving 100 percent (instead of 80 percent) reimbursement for his medical expenses. Appellant submitted his first medical claim for his expenses under the new policy in February 1988. Because he had not paid the stop loss amount under the new policy, he received only 80 percent reimbursement for this claim. He protested the reduced reimbursement to respondent's claims department. In August 1988, respondent's employee Elizabeth Kurrasch wrote to appellant that he was entitled to 100 percent coverage for his medical expenses relating to his eye. Kurrasch explained in the letter that there was no record of appellant's written acceptance of the new plan.

Also, in August 1988, respondent informed Northwest that it was not going to renew the policy. Respondent was required to notify appellant of the cancellation within 31 days; however, it gave him 6 weeks' notice in October 1988. Appellant at the same time was notified that respondent was giving him the option of converting his policy from group to individual coverage. Appellant chose not to exercise this option. The group policy was terminated December 1, 1988.

Appellant's first cause of action for declaratory relief alleged that his right to receive reimbursement under the group policy for his medical expenses was effective throughout his lifetime up to the maximum liability amount of $1 million. Appellant's second cause of action alleged that respondent had misrepresented at the time it sold the policy to him that the group policy would provide medical coverage up to $1 million during his lifetime.

The trial court granted respondent's motion for summary judgment on appellant's first cause of action, finding that the case appellant relied on to support his claim that his right to medical benefits "vested" under the group policy, *Fields* v. *Blue Shield of California* (1985) 163 Cal.App.3d 570 [209

[1]All further references herein to appellant's medical expenses pertain only to the charges he incurred in relation to his eye.

[2]The stop loss amount is defined as out-of-pocket expenses by the insured.

Cal.Rptr. 781], was inapplicable to the facts herein. Respondent's motion for judgment on the pleadings as to appellant's second cause of action also was granted, the trial court finding that he failed to state a cause of action for either promissory or constructive fraud.

## DISCUSSION

*Declaratory Relief Count*

The purpose of the summary judgment procedure is to ascertain by means of affidavits the presence or absence of triable issues of fact. (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) An appellate court is not bound by the trial court's ruling on a motion for summary judgment, but independently reviews the facts presented to the trial court to determine their effect as a matter of law. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].) ▮ When the terms of an insurance policy are clear and unambiguous, the policy's interpretation presents an issue of law which may be resolved by summary judgment. (*Rogers* v. *Prudential Ins. Co.* (1990) 218 Cal.App.3d 1132, 1136 [267 Cal.Rptr. 499].)

Appellant's first cause of action for declaratory relief concerns a question on which there is no statutory authority and little case authority in California: whether upon modification or termination of a health insurance policy the insurer may still be held liable for the insured's medical expenses for a particular illness or condition which was covered under the former policy.

Other states' treatment of this issue of vesting of medical insurance coverage has depended principally on the precise wording of the policy in question rather than the particular manner in which the insurance coverage was eliminated. (Annot. (1975) 66 A.L.R.3d 1205, 1207-1209.) "Thus, the insurer's liability for all expenses relating to a particular illness or condition has been held to have become fixed upon the inception of the illness or disease, where the policy in question *provided benefits for an illness contracted during the life of the contract.* [Fn. omitted.] But where the policy *provided insurance against the insured's incurring expenses or charges as a result of a disease or condition having its inception during the policy term,* the termination of the policy has been held to mark the end of the insurer's liability thereunder." (*Id.,* at p. 1208, italics added.)

Whether or not the concept of vesting should apply at all to health insurance contracts (respondent contends it should not) is not necessary for us to decide here in view of the unambiguous terms of appellant's policy which defeat his claim for "lifetime" benefits.

We look first at *what event* was insured according to the language of the instant policy. If the relevant event was the inception of a disease or condition by appellant during the life of the policy, this may give rise to respondent's posttermination liability. If appellant's incurrence of medical expenses during the policy period was the relevant event, then this creates only pretermination liability for respondent. (*Mote* v. *State Farm Mut. Auto. Ins. Co.* (Ind.App. 1990) 550 N.E.2d 1354.)

Appellant bases his claimed entitlement to posttermination benefits on the sales brochure, the certificate of insurance, and the master group policy. However, there is no language in the master group policy or the certificate of insurance specifying or suggesting that it was the occurrence of a specific injury or illness that was the insured event. To the contrary, the documents unambiguously stated that the insured was entitled to medical benefits for covered charges incurred during the life of the policy, that benefits were payable for covered charges only during the term of the policy, and that no benefits were payable for covered charges incurred after termination of insurance coverage. Moreover, the sales brochure given to appellant echoed the foregoing by stating that insurance coverage was contingent upon continuation of the policy.

Also pertinent to the issue of vesting is the presence of certain provisions in health insurance policies. For example, if the subject policy expressly provides for termination of coverage, for no posttermination coverage, or for posttermination benefits under strictly limited conditions, no vesting of benefits has been found. (*Sonneman* v. *Blue Cross, Etc., of Minn.* (Minn.Ct.App. 1987) 403 N.W.2d 701; *Tabb* v. *Louisiana Health Services & Indem. Co.* (La.Ct.App. 1977) 352 So.2d 771.)

*Sonneman, supra*, specifically referred to the only California case applying the "vesting" concept to a health insurance policy, *Fields* v. *Blue Shield of California, supra*, 163 Cal.App.3d 570. In *Fields*, the original group health policy provided for a "lifetime maximum benefit" for treatment of mental illness of $50,000. A subsequent modification of the policy excluded coverage for psychological treatment when it was used toward earning a degree. The plaintiff was a physician who began psychotherapy for medical reasons, but who later decided to become a psychotherapist and continued receiving therapy as part of his training requirements. When payment for this treatment ceased, he brought suit to recover damages.

The *Fields* court found, not only that the policy's language relating to benefits was ambiguous, but that the defendant insurer continued to pay for mental health benefits two years after the modification disallowed such

benefits. The appellate court thus interpreted "lifetime maximum benefit" in favor of the insured plaintiff, holding that his interpretation of the lifetime $50,000 maximum amount was supported by the insurer's own acts in interpreting the policy. (163 Cal.App.3d at pp. 586, 588.) The *Fields* court further held that, although the policy was a medical insurance contract, it was appropriate to construe its provisions in the same manner as an accident insurance policy; that is, the insured's right to benefits under the contract became vested when medical treatment became necessary, and this "vesting" was not eliminated by the subsequent termination of the policy. (*Id.*, at pp. 587-588.)

*Sonneman*, in contrast to *Fields*, analyzed the term "lifetime" coverage in its policy as *not* creating maximum lifetime coverage in the total amount specified, but as the maximum benefit allowed *if* the insured was insured under the policy throughout his lifetime. (403 N.W.2d at pp. 705-706.) The *Sonneman* court found that a contrary reading would render meaningless the unambiguous policy provisions in that case which (1) provided for the termination of coverage, and (2) extended benefits beyond termination of the policy only to insureds who were disabled. (*Id.*, at p. 706.)

Appellant contends that *Fields* governs here. Hence, he claims, he has a right to receive a "lifetime" reimbursement of up to $1 million for his medical expenses, and such right is unaffected by respondent's 1988 termination of the group policy. Not so.

The instant policy is similar to the policy in *Sonneman*, but not to the contract in *Fields*. We therefore reject appellant's invitation to interpret *Fields* as an attempt by the appellate court in that case to enunciate a general rule of "vesting" pertaining to health insurance policies, no matter what the policy language.

Moreover, unlike *Fields or Sonneman*, here, significantly, neither the master group policy nor the certificate of insurance described the maximum reimbursement amount for medical expenses as a "lifetime" sum. Instead, the documents simply described the amount of $1 million as an "aggregate" or "maximum" benefit.

This is in contrast to the sales brochure issued to appellant which *did* specify that the maximum of $1 million for each medical cause was "*payable for the lifetime of the insured.*" Nonetheless, appellant's reliance on the brochure is misplaced. The brochure itself stated that it was for information only and *should not be considered a substitute for the master group policy.* Also, the aforementioned "lifetime" statement was qualified by the brochure

itself which stated, "provided [the insured] remains insured in the plan." This language is reasonably interpreted as meaning that "lifetime" benefits were provided only while there was insurance coverage.

Thus, under the present circumstances the only "lifetime" benefits available to appellant were those for covered charges incurred during the *lifetime* of his policy. This is so in light of the policy's numerous unambiguous provisions which anticipated the termination of insurance coverage. These provisions expressly provided for the termination of the policy, for the extension of benefits after termination only to totally disabled insureds (appellant concedes he is not totally disabled), and for the availability of conversion of coverage upon termination. Such provisions would be rendered meaningless if the instant policy was interpreted as creating "lifetime" benefits for appellant regardless of the termination of his insurance coverage. (*Sonneman* v. *Blue Cross, Etc., of Minn.*, *supra*, 403 N.W.2d at p. 706.)

■ An insurance policy, like any other contract, must be construed as an entirety with each provision lending to the other. (*Holz Rubber Co., Inc.* v. *American Star Ins. Co.* (1975) 14 Cal.3d 45, 56 [120 Cal.Rptr. 415, 533 P.2d 1055, 79 A.L.R.3d 518].) A party is bound by all contract provisions. (*Fields* v. *Blue Shield of California*, *supra*, 163 Cal.App.3d at p. 578.) So is appellant bound by the provisions in his former policy dealing with termination of insurance coverage.

■ Appellant additionally contends that respondent modified the policy, effective in 1986, to give it a "new right" to unilaterally terminate the health policy. This argument was expanded upon by appellant's counsel in oral argument, who claimed that, prior to the 1986 modification and at the time of appellant's injury, respondent had no right under the policy to "unilaterally" terminate it. Appellant's position is without merit.

Both the certificate of insurance and the master group policy issued to appellant provided that insurance coverage would terminate upon the termination of the master group policy. As respondent notes, termination of the master policy was accomplished under the policy by giving required notice to the insured (31 days) and insurer (90 days). Adequate notice of the cancellation of the master policy was given here.

Moreover, appellant's theory that an insurance contract cannot be "unilaterally" terminated by an underwriter is unsupported by any legal authority. There also was no provision in the modified policy stating or implying that the policyholder must agree to the termination of the master policy.

We conclude that the group policy herein is not reasonably subject to an interpretation that medical benefit payments would continue beyond the

termination of the subject insurance. The trial court did not err in granting respondent's motion for summary judgment. (*Rogers* v. *Prudential Ins. Co.*, *supra*, 218 Cal.App.3d at p. 1136.)

*Fraud Count*

A motion for judgment on the pleadings has the same purpose and effect of a general demurrer, that is, it determines whether the complaint contains the necessary facts to state a cause of action. (*Colberg, Inc.* v. *State of California* (1967) 67 Cal.2d 408, 411-412 [62 Cal.Rptr. 401, 432 P.2d 3]; *Uptown Enterprises* v. *Strand* (1961) 195 Cal.App.2d 45, 47-48 [15 Cal.Rptr. 486].)

Here, we agree with the trial court's ruling in granting respondent's motion for judgment on the pleadings that appellant has failed to state a cause of action for fraud.

In seeking damages under this count, appellant concluded there was a connection between his inability to obtain replacement insurance and respondent's conduct. The alleged conduct included (1) representations by respondent's sales agent that medical coverage for any illness or injury occurring during the life of the policy would be effective throughout appellant's lifetime, (2) the August 1988 letter by respondent's claim department employee Ms. Kurrasch promising appellant 100 percent coverage for his medical expenses, and (3) respondent's failure to notify appellant in August 1988 that it intended to cancel the master group policy.

Essential allegations for a fraud action include (1) a false representation as to a material fact, (2) knowledge of the falsity, (3) intent to defraud, (4) justifiable reliance, and (5) resulting damage. (*Wilhelm* v. *Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331 [231 Cal.Rptr. 355].) The absence of any of these elements will preclude recovery. (*Ibid.*)

Apart from other missing allegations, the only one necessary to discuss here is the last element of resulting damage.

Appellant's second amended complaint failed to state any facts connecting the aforementioned conduct to his claimed damages. He did not allege any facts showing that either his reliance on respondent's sales agent's representations, or his reliance on Kurrasch's letter, or his learning of the policy termination in October 1988 instead of August 1988, affected his ability to obtain future insurance. Appellant was given ample notice of the policy's termination and of his ability to retain insurance with respondent under an

individual policy. Under the group policy, no more was required by respondent.

The judgment is affirmed.

Gilbert, J., and Yegan, J., concurred.