**Charles CHU as guardian of Paula S. Chu, a minor, Plaintiff,**

**v.**

**ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**No. C97–20215 EAI.**

United States District Court,
N.D. California,
San Jose Division.

Oct. 6, 1997.

Melvyn D. Silver, Ruth Silver Taube, Silver & Taube, San Jose, CA, for Plaintiff.

James R. Wilcox, Thelen, Marrin, Johnson & Bridges LLP, San Francisco, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT

INFANTE, United States Magistrate Judge.

## I. INTRODUCTION

Defendant Allianz Life Insurance Co. ("Allianz") moves, pursuant to Rule 56, F.R.Civ. P., for summary judgment on all claims in Plaintiff's complaint. Plaintiff Chu brings a cross-motion for partial summary adjudication of his breach of contract claim. For the reasons set forth below, Allianz's Motion for Summary Judgment is GRANTED and Chu's Cross–Motion for Partial Summary Adjudication is DENIED.

## II. BACKGROUND

The underlying facts in this case are not in dispute. Paula Chu is a high school student at Homestead High School in Cupertino, California. As a high school student, Paula was offered the opportunity to apply for coverage under a Student Accident Health Insurance Policy (the "Policy"), No. 8598–005, underwritten and administered by Allianz. The Policy was administered by a third party administrator, Myers–Stevens & Co., Inc., who provided "descriptive materials and applications to various schools, students, and parents of students with respect to various programs of health insurance." Plaintiff's Undisputed Fact ("UF") No. 4. Prior to August 16, 1995, Charles Chu received a pamphlet entitled "Student Accident and Health Insurance." He selected the "School–Time Plans" for Paula, with a $50,000 maximum benefit, and paid the policy premium. UF No. 5.

The brochure describes the "School Time Plans" as follows:

Covers injuries caused by accidents occurring:

- at school during the school day while continuously on school premises (including academic summer classroom sessions) and up to one hour immediately before and after regularly scheduled classes.
- while attending or participating in school-sponsored and directly supervised activities, including all interscholastic sports activities **except tackle football.**
- while traveling: (1) directly and without interruption between home and school to attend regularly scheduled classes or to participate in school activities immediately before and after classes, and (2) in any school-sponsored vehicle to or from a school-sponsored activity.

(Original Emphasis)

The back page of the brochure sets forth a list of fifteen exclusions for all accident plans under a section labeled "exclusions for all accident plans," including one provision which excludes benefits for any treatment or loss resulting from: "10. Injury or death caused while riding in or on, entering or alighting from a two or three-wheeled motor vehicle or a motor vehicle not designed primarily for use on public streets and highways."

The back page of the brochure also contains a section entitled "requirements & limi-

tations for all accident plans," which states in full:

> The first physicians's visit must be within 120 days after the accident and then we pay for covered expenses rendered within a year from the date of first physician's visit. For a school-related accident, the incident must be reported immediately to a school authority under the School–Time or Football Plans. For all other accidents, please contact your school or Myers–Stevens to receive a claim form which must be filed with Myers–Stevens within ninety days after the date of first treatment. Aggravations of pre-existing conditions are paid up to a $500 maximum. Injuries sustained as a result of riding in or on, entering into or alighting from, or being struck by a motor vehicle (see exclusions above for motor vehicles not covered under the plan) or while surfing are limited to a $4,000 maximum.

On or about August 16, 1995, Chu received "Enrollment Information" and two "Student Accident ID Cards" from Myers–Stevens. The Enrollment Information stated, "Attached are two identification cards for the student enrolled for student accident coverage. The master certificate is held by the school district office. No individual policy will be sent." Chu asserts that he was not sent any other insurance information prior to Paula's accident. UF No. 9.

On December 19, 1995, at approximately 3:08 p.m., Paula Chu was involved in a pedestrian-automobile accident when she was struck by a car as she left school for home. Paula has incurred in excess of $50,000 in medical bills as a result of the accident. UF Nos. 11, 12. Chu made a timely claim for benefits under the policy, but Myers–Stevens limited Chu's claim to $4,000 based upon the policy limitations. UF No. 13. In a letter explaining its position, Meyers–Stevens stated:

> Under our school plans, losses involving motor vehicles are either excluded or are limited to $4,000, depending upon the nature of the motor vehicle involved. As we read together over the phone, the section in your brochure entitled *Requirements and Limitations for All Accident Plans*

says, in part, the [i]njuries sustained as a result of being struck by a motor vehicle are limited to a $4,000 maximum. The parenthetical reference to motor vehicles which are excluded basically deals with injuries sustained while riding on two- or three-wheeled motor vehicles or off-road vehicles. This exclusion obviously does not apply to Paula's case.

Chu did not see a copy of the "Master Certificate" until he requested, and was sent, a copy of the 16–page policy on April 29, 1996. UF No. 14. Under a section entitled "Deductible Amount–Co–Insurance Amount—Hospital and Professional Service Expense Benefit Limitations," the Master Certificate provides, "Expenses for covered injuries sustained as a result of riding in or on, entering or alighting from or being struck by a motor vehicle, or for surfing, not to exceed: $4,000." See, Defendant's Exhibit 2, Accident Certificate, p. 26.

On March 6, 1997, Charles Chu, as guardian of Paula S. Chu, filed a complaint for breach of insurance contract and breach of the implied covenant of good faith and fair dealing against Allianz. Jurisdiction is based upon diversity of citizenship of the parties.

## III. SUMMARY JUDGMENT STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, the moving party has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Rule 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Evidence that "is merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Id.* at 249–250, 106 S.Ct. at 2511.

Summary judgment cannot be granted where a genuine dispute exists as to any material fact. Rule 56(c), F.R.Civ.P. A "material" fact is one which might affect the outcome of the case under the applicable law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the non-moving party. *Id.* In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255, 106 S.Ct. at 2513. Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] he is ruling on a motion for summary judgment." *Id.*

Summary judgment may be granted where the underlying evidence is undisputed, and the record persuades the court that a trial would add nothing to its ability to decide the case. *TransWorld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676, 684 (9th Cir.1990).

## IV. DISCUSSION

Since this suit was brought in federal court under diversity of citizenship jurisdiction, the substantive law of California applies. *Continental Casualty Co. v. City of Richmond,* 763 F.2d 1076, 1078 (9th Cir.1985). Interpretation of an insurance policy is a question of law. *Waller v. Truck Ins. Exchange, Inc.,* 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 378, 900 P.2d 619, 626 (1995); *California Shoppers, Inc. v. Royal Globe Ins. Co.,* 175 Cal.App.3d 1, 35, 221 Cal.Rptr. 171, 187 (1985).

## A. PLAINTIFF'S BREACH OF INSURANCE CONTRACT CLAIM

The rules governing policy interpretation require the court to first look to the language of the insurance contract to ascertain its plain meaning or the meaning a lay person would ordinarily attach to it. *Waller, supra,* 11 Cal.4th at 18, 44 Cal.Rptr.2d at 378, 900 P.2d at 627. "When interpreting an insurance policy, the intent of the parties and the reasonable expectations of the insured are considered. The best evidence of the intent of the parties is the policy language." (cites omitted.) *Continental Casualty Co. v. City of Richmond,* 763 F.2d 1076, 1080 (9th Cir. 1985). "It is a basic principle of insurance contract interpretation that doubts, uncertainties and ambiguities arising out of policy language ordinarily should be resolved in favor of the insured in order to protect his reasonable expectation of coverage. It is also well established, however, that this rule of construction is applicable only when the policy language is found to be unclear. 'A policy provision is ambiguous when it is capable of two or more constructions, both of which are reasonable.' . . . We are also guided by the principle that words in an insurance policy must be read in their ordinary sense, and any ambiguity cannot be based on a strained interpretation of the policy language." (cites omitted.) *Producers Dairy Delivery Co. v. Sentry Ins. Co.,* 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986).

While coverage clauses are interpreted broadly to provide the greatest possible protection to the insured, exclusionary and limitation clauses are construed narrowly against the insurer. *Continental Cas. Co. v. City of Richmond, supra,* 763 F.2d at 1079. Exclusionary clauses are required to be precise in their language, must be conspicuous within the policy, and must contain language

which is plain and clear. *Ponder v. Blue Cross of Southern California,* 145 Cal.App.3d 709, 719, 193 Cal.Rptr. 632 (1983). A limitations or exclusionary clause must satisfy the following requirements: "First, the exclusion must be positioned in a place and printed in a form which would attract a reader's attention. Secondly, the substance of the exclusion must be stated in words that convey the proper meaning to persons expected to read the contract." *Id.* See, e.g., *20th Century Ins. Co. v. Liberty Mut. Ins. Co.,* 965 F.2d 747, 752 (9th Cir.1992), noting that "California Commercial Code § 1201 provides that 'A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it.... Whether a term or clause is 'conspicuous' or not is for decision by the court.'"

### 1. The Insurance Brochure Distributed to Plaintiff Constitutes the Insurance Agreement and is Binding on Allianz

■ The first point of contention between the parties is which insurance documents should be examined to determine whether the limitations policy is "conspicuous, clear, and unambiguous." Chu contends that the insurance brochure given to him when he purchased the insurance policy should be the governing document since Chu never received a copy of the Master Policy. Allianz contends that Master Policy, and not the informational brochure distributed to interested participants, is the binding document at issue. Allianz points out that the brochure specifically states that "[t]his brochure provides a brief description of the benefits available" and that "[c]omplete details may be found in [the] Group Master Policy." The brochure also states that it "is an illustration, not a Master Certificate.... The Master Certificate is filed with your school/district office."

In *Bareno v. Employers Life Ins. Co. of Wausau,* 7 Cal.3d 875, 103 Cal.Rptr. 865, 500 P.2d 889 (1972), the California Supreme court held that the terms of an insurance certificate, which was provided to the insured by the insurer, would be examined in interpreting the scope of coverage and was binding upon the insurer. The *Bareno* court explained:

We begin by noting that rather than an analysis of the company's master policy both parties seek an interpretation of the insurer's certificate that the employer issued to Bareno. Whatever the purported coverage of the policy, "the terms of the certificate are binding on the insurer." [citing *Humphrey v. Equitable Life Assur. Soc.,* 67 Cal.2d 527, 534, 63 Cal.Rptr. 50 [55] 56, 432 P.2d 746, 751 (1967).] "This result is easily justified upon the grounds that the individual certificate is the only document which the employee sees or is given at any time and that the insurer, who drafts the instrument in language it selects, cannot thereafter complain that it does not express the intention of the parties." [Citing *Humphrey.*] For this reason, the court held in *Evans v. Holly Corp.,* [15 Cal.App.3d 1020, 1023, 93 Cal. Rptr. 712, 713 (1971)], "Where the representations in an insurance certificate indicate broader coverage than that provided by the master policy, the insurer is bound by the terms of the certificate." (other cites omitted.) *Bareno,* 7 Cal.3d at 881, 882, 103 Cal.Rptr. at 865, 866, 500 P.2d at 889, 890.

See also, *Shepard v. CalFarm Life Ins. Co.,* 5 Cal.App.4th 1067, 1071, 7 Cal.Rptr.2d 428, 429 (1992) (holding that where certificates of insurance are the only information provided to the policy holders, the certificates constitute the insurance policy and are binding on the insurer) and *Williams v. American Casualty Co. of Reading, Pa.,* 6 Cal.3d 266, 271, 272, 98 Cal.Rptr. 814, 818, 819, fn. 2, 491 P.2d 398, 402, 403, fn. 2 (1971), ("In the event of a conflict or ambiguity between [the master policy and the certificate of insurance] the terms of the Certificate are binding on the insurer.") The California Supreme Court has rejected the contention that reference to the Master Policy in a certificate of insurance would excuse the insurer from the provisions contained in the certificate of insurance. *Humphrey v. Equitable Life Assur. Soc.,* 67 Cal.2d 527, 534, 63 Cal.Rptr. 50, 55, 432 P.2d 746, 751 (1967).

In this case, it is undisputed that the only document describing the insurance plan provided to Chu was the "Student Accident & Health Insurance" informational brochure. Although this brochure is not labeled a "certificate of insurance," the same rationale for binding an insurer to the terms of an individual certificate of insurance would apply to the informational policy when this is the only document distributed to the insured. The limitation terms in the brochure and Master Policy vary textually from each other, and therefore, the court will look to the limitations and exclusions set forth in the brochure in determining whether the limitation policy is "clear, conspicuous, and unambiguous."[1]

## 2. The Limitation Clause is 'Conspicuous, Plain, and Clear'

█ Chu contends that the wording of the limitation clause is ambiguous and susceptible to different meanings. The limitation states, "Injuries sustained as a result of riding in or on, entering into or alighting from, or being struck by a motor vehicle (see exclusions above for motor vehicles not covered under the plan) or while surfing are limited to a $4,000.00 maximum." Chu asserts that the parenthetical phrase in the limitation clause, which refers the reader back to exclusion 10,[2] causes an ambiguity as to the meaning of the limitation. Chu contends that "[t]he parenthetical in exclusion 10, when incorporated after the words 'being struck by a motor vehicle' appears to refer to specific types of vehicles. Focusing only on injuries that result from being struck by a car, the limitations reads as follows: Injuries sustained as a result of ... being struck by a motor vehicle (see exclusions above for motor vehicles not covered under the plan) ... are limited to $4,000 maximum. In other words, the $4,000 limitation applies only if one is struck by one of the types of vehicles listed in exclusion 10." Plaintiff's Points and Au-

thorities in Support of Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment, p. 17. Pursuant to Chu's interpretation of this phrase, he contends that his recovery would be limited to $4,000 if a motor vehicle described in exclusion 10 struck his daughter, and he would receive the $50,000 coverage if a motor vehicle not contained in the exclusion struck his daughter. Chu also points out that a provision delineated as "requirements and limitations for the student health care," a plan not selected by Chu, uses a simpler phrase than the limitations clause at issue, stating "Maximum for motor vehicle and surfing injuries is $4,000." Chu contends that the wording of this phrase contrasts sharply with the wording in the "all accident plans" provision and "the difference in wording reasonably suggests that the two limitations are different in scope because the same drafter could have used the words in the second limitation if he or she wished to convey the same meaning." *Id.* at p. 18.

Allianz contends that the brochure unambiguously provides for a $4,000 limitation on injuries sustained as a result of being struck by a motor vehicle. Allianz asserts "[t]he meaning of this limitation is clear—injuries from being struck by a motor vehicle are limited to $4,000 maximum. The parenthetical clause simply emphasizes that for certain vehicles, described above in the exclusion section as two- and three-wheeled vehicles, benefits are completely excluded." Opposition of Defendant Allianz to PL's Cross Motion for Partial Summary Judgment, p. 13. Allianz asserts that the parenthetical phrase is an amplifying or explanatory phrase, and if it were removed from the sentence, "it continues to be patently clear that the plaintiff's benefits are limited to $4,000." *Id.* at 14. Allianz also contends that Chu's interpretation of the phrase to limit coverage to $4,000

---

1. Defendants citation to *Fraker v. Sentry Life Ins. Co.*, 19 Cal.App.4th 276, 23 Cal.Rptr.2d 372 (1993) and *Hackethal v. National Casualty Co.*, 189 Cal.App.3d 1102, 234 Cal.Rptr. 853 (1987) is not persuasive since the insured in both of these cases received the master policy and the informational brochure. In this case, it is undisputed that the master policy was not provided to Chu until after Paula's accident.

2. Exclusion 10 excludes recovery for "Injury or death caused while riding in or on, entering into or alighting from a two or three-wheeled motor vehicle or a motor vehicle not designed primarily for use on public streets and highways."

only if his daughter was injured by the kind of vehicle described in exclusion 10 is unreasonable since this provision excludes all benefits for injuries sustained by the type of vehicles described therein (i.e., motorcycles or ATVs).[3]

Plaintiff does not complain that any of the words used in the limitation clause is confusing or unclear. Rather, Chu contends that the inclusion of the parenthesis within the limitation clause makes the statement reasonably susceptible to both Chu's and Allianz's interpretations.

■ Webster's New World Dictionary defines parenthesis as "an additional word, clause, etc. placed as an explanation or comment within an already complete sentence." 3rd Ed., p. 982. Parenthetical clauses typically encompass "explanatory matter, comments, or asides not intended to be part of the main thought" and are set off from the sentence either by dashes or parenthesis. See, e.g., Theodore M. Bernstein, The Careful Writer: A Modern Guide to English Usage, p. 368. In reviewing the limitations clause in context, its clear that the parenthetical phrase simply reminds the reader that injuries caused by "riding in or on, entering or alighting from a two or three-wheeled motor vehicle or a motor vehicle not primarily for use on the public streets and highways" are excluded from all coverage, notwithstanding the $4,000 limitation for injuries caused by other motor vehicles. Had Allianz not included such a phrase, it may have left itself open to the charge that its 10th exclusion was inconsistent with its policy limitations, and therefore any accident involving a two or three-wheeled motor vehicle was covered up to $4,000. Plaintiff's interpretation of this clause, on the other hand, requires the kind of "strained interpretation" prohibited by *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 41 Cal.3d 903, 912, 226 Cal.Rptr. 558, 718 P.2d 920 (1986). Plaintiff asks that the court interpret the limitations clause as incorporating exclusion 10, but only as to injuries sustained by being struck by a motor vehicle. An insurance policy cannot be cut

and pasted in an attempt to make a statement ambiguous. The parenthetical clause does not refer only to the last type of injury, but to all of the listed injuries prior to the parenthesis. Moreover, exclusion 10 does not purport to define the term "motor vehicle" to refer only to two or three-wheel vehicles or experimental automobiles, and incorporating this definition into the limitation clause is not supported by the language of the policy.

■ Plaintiff also contends that the limitation is not "conspicuous," asserting that the limitation is in a "dense pack" format with no bold-face type, shading, or highlighting, and the limitation is "buried" among unrelated requirements. Allianz contends that Plaintiff's contentions are "ludicrous" since the entire requirements and limitations section is only five sentences long and the Brochure itself is only four pages.

The Ninth Circuit has construed California law to require that an exclusionary clause in an insurance policy must be conspicuous, plain, and clear to be effective against the insured *regardless* of the reasonable expectations of the insured. *20th Century Ins. Co. v. Liberty Mut. Ins. Co.*, supra, 965 F.2d at 753. In so doing, the Ninth Circuit rejected minority California decisional law which held that exclusionary clauses that are not contrary to the reasonable expectations of the insured need not be conspicuous, plain and clear. *Id.*

"To be conspicuous, an exclusion must be positioned in a place and printed in a form which will attract the reader's attention." *Travelers Ins. Co. v. Lesher*, 187 Cal.App.3d 169, 194, 231 Cal.Rptr. 791, 796 (1986), overruled on other grounds in *Buss v. Sup. Court (Transamerica Ins. Co.)*, 16 Cal.4th 35, 50, 65 Cal.Rptr.2d 366, 376, 939 P.2d 766, 776 (1997). In *Cal–Farm Ins. Co. v. TAC Exterminators*, 172 Cal.App.3d 564, 577, 218 Cal. Rptr. 407, 414 (1985), the court identified different situations in which an exclusion clause has been invalidated as not being conspicuous:

**3.** This interpretation is partially erroneous since exclusion 10 only excludes benefits for injuries or death caused by riding in or on, entering or alighting from a two or three-wheeled motor vehicle, with no mention of injuries caused by being struck by such a vehicle.

"Courts have invalidated exclusions as not conspicuous where not in a section labeled exclusions and placed on overcrowded page (*Schmidt v. Pacific Mut. Life Ins. Co.* (1969) 268 Cal.App.2d 735, 740, 74 Cal.Rptr. 367; *Miller v. Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 752, 161 Cal.Rptr. 322), or in a section labeled 'General Limitations' but in a 'dense pack' format (*Ponder v. Blue Cross of Southern California,* (1983) 145 Cal.App.3d 709, 722, 193 Cal.Rptr. 632) or hidden in a subsequent section of the policy bearing no clear relationship to the insuring clause and concealed in fine print. (*Gray v. Zurich Insurance Co.* 65 Cal.2d 263, 273 [54 Cal. Rptr. 104, 419 P.2d 168 (1966) ].)"

The informational brochure at issue is relatively short and contains only three pages of text delineating the policy coverage. The last page of the brochure lists exclusions, requirements, and limitations "for all accident plans" and for the "student health care plan." The section setting forth "requirements and limitations for all accident plans" is highlighted against a golden-yellow background in bold letters and in a font larger than the surrounding text. This heading stands out against the page since it is only one of four highlighted sections. The "requirements and limitations for all accident plans" includes five sentences in paragraph form which is in the same font as the listed exclusions, but is a smaller font than the plan descriptions on the second page of the brochure.

The sentence limiting liability on injuries sustained as a result of being struck by a motor vehicle is appropriately placed under the heading "requirements & limitations for all accident plans." Since one would expect to find a limitation on liability under the heading "requirements & limitations for all accident plans," the location of this limitation is appropriate and is not buried or otherwise hidden in an unrelated section.

In contrast, in *Ponder v. Blue Cross of Southern California, supra,* 145 Cal.App.3d 709, 723, 193 Cal.Rptr. 632, 640, the court held that an exclusion for "temporomandibular joint syndrome" was not conspicuous when listed in a limitations section for "Den-

tal Care Services" since temporomandibular joint syndrome is a medical disorder of the joint linking the jawbone and the skull and is not a traditional dental problem. The court stated that "the bold face subheading ("Dental Care") actually misleads, rather than facilitat[es] comprehension, while the fine print and overall length of the contract discourages discovery of the misplaced exclusionary clause." Similarly, in *Jauregui v. Mid–Century Ins. Co.,* 1 Cal.App.4th 1544, 3 Cal. Rptr.2d 21 (1991), the court held that a permissive user limitation in an automobile insurance policy was not conspicuous since the permissive user limitation did not appear in either of the two sections an insured was likely to look for such a limitation, i.e., the "Exclusions" sub-section or the "Limits on Liability" subsection. Rather, this limitation was contained within a sub-section entitled "Other Insurance," even though the permissive user limitation had nothing to do with insurance from any other source.

■ While the font size of the text under the "requirements & limitations" section (along with the entire page) is small and dense, this section only contains five sentences, two of which relate to limitations on coverage. Exclusionary clauses do not fail merely because of the density of verbiage. *Cal–Farm Ins. Co. v. TAC Exterminators, supra,* 172 Cal.App.3d at 578, 218 Cal.Rptr. at 414. The limitations provision at issue was appropriately placed in a section labeled "requirements & limitations," the sub-heading was highlighted and bolded so as to draw the attention of the reader, and was contained within a relatively short provision containing only five sentences, thus satisfying the requirement of being "conspicuous."

Therefore, for the foregoing reasons, Allianz's motion for summary judgment on Plaintiff's claim of breach of insurance contract is GRANTED and Plaintiff's cross-motion for summary adjudication of its breach of contract claim is DENIED.

**B. PLAINTIFF'S CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

■ Allianz contends that summary judgment should be granted on Chu's claim for

tortious breach of the implied covenant of good faith and fair dealing since this claim is derivative and dependant on the breach of the underlying contract. Moreover, Allianz contends that it has paid the maximum amount payable under the policy to Chu, i.e., $4,000.

Since Allianz's position regarding its interpretation of the contract was upheld, there cannot be any bad faith in its refusal to pay benefits above the $4,000 limitations clause. See, e.g., *Kopczynski v. Prudential Ins. Co.*, 164 Cal.App.3d 846, 849, 211 Cal.Rptr. 12, 14 (1985); *State Farm Fire and Casualty Co. v. Martin*, 872 F.2d 319, 321 (1989). The complaint also alleges that Allianz acted in bad faith in refusing to investigate Paula Chu's claim and in failing to investigate and monitor the adjustment practices of Myers–Stevens to assure that Myers–Stevens was administering the Policy according to its terms. However, Plaintiff has not raised any facts tending to show that Allianz failed to appropriately investigate the complaint or breached the implied covenant, other than by failing to pay Plaintiff more than $4,000.[4] (See, e.g., *Martin, supra,* holding that summary judgment on claims of breach of implied covenant of good faith and fair dealing and bad faith investigation of insured's claim was appropriate where insured presented no evidence to support these counterclaims and the insurer prevailed on its claim for declaratory relief).

Allianz's interpretation of the applicable contract terms as setting a $4,000 limit on benefits for Plaintiff's claims was reasonable as a matter of law. Therefore, it is entitled to summary judgment on Plaintiff's claim for Breach of Implied Covenant of Good Faith and Fair Dealing.

## V. CONCLUSION

For the reasons set forth above, Allianz's motion for summary judgment is GRANTED, and Plaintiff's cross-motion for summary

adjudication of its breach of insurance contract claim is DENIED.

---

4. Plaintiff requests that the court delay summary adjudication of this claim until further discovery has commenced. However, the information Plaintiff seeks to discover is related only to his contention that Allianz wrongfully withheld benefits above $4,000, not that Allianz failed to properly investigate Paula Chu's claim or Myer–Steven's administration of the Policy.